```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA
```

**VOLVO TRUCKS NORTH AMERICA, INC.**                        CIVIL ACTION

**VERSUS**                                                  NO. 07-3127

**CRESCENT FORD TRUCK SALES, INC. ET AL**                   SECTION B(3)

## ORDER AND REASONS

Before the Court are Defendant Crescent Ford Truck Sales, Inc.'s ("Crescent") and Plaintiff's respective Motions for Summary Judgment. (Rec. Doc. 43, 46). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED** to the extent that once arbitration is initiated in accordance with the AAA Commercial Rules, all parties are compelled to arbitrate the dispute.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **DENIED.**

## BACKGROUND

On June 20, 2000, Defendant Crescent Ford Truck Sales, Inc. ("Crescent") entered into a "Dealer Sales and Services Agreement" ("Dealer Agreement") with Plaintiff Volvo Trucks North America, Inc. ("Volvo"), pursuant to which Defendant operated a Volvo Dealership. The term of the Dealer Agreement was five years. With regard to dispute resolution procedures, the Dealer Agreement

1

provided the following: "The parties shall promptly seek, in good faith and in the spirit of cooperation, a rapid and equitable solution to any dispute, controversy or claim between them arising out of...this Agreement."  Additionally, it provided: "If the dispute has not been resolved by Negotiation...the matter shall be submitted...for mediation."  Finally, it provided: "If Negotiation followed by mediation fails to reach an equitable solution...within 90 days, then such dispute may be settled by final and binding arbitration.  Once initiated, all parties shall cooperate with the AAA and each other to reach the final decision."

On March 7, 2005, Volvo issued to Crescent a notice of non-renewal of the Dealer Agreement.  In response to this notice and in an attempt to prevent Volvo's termination of the Dealer Agreement, Crescent filed with the Louisiana Motor Vehicle Commission ("LMVC") a *Verified Emergency Petition on Behalf of Crescent Ford Truck Sales, Inc., for an Interlocutory and Permanent Cease and Desist Order Against Volvo Trucks North America, Inc., Pursuant to La. Revised Statutes Title 32: §§ 1254 & 1256 to Prevent the Refusal to Renew the Current Dealer Sales and Service Agreement or to Attempt to Coerce Crescent Ford Truck Sales, Inc. to Modify the Dealer Sales and Service Agreement Under the Threat of Cancellation*.  The basis of the Petition was that Volvo failed to properly allege just cause for termination of the Dealer Agreement as required under Louisiana law governing the distribution and sale of motor

vehicles, La. Rev. Stat. 32: 1251, et seq.

On March 24, 2005, the LMVC issued an interlocutory cease and desist order against Volvo "maintaining the status quo between [Crescent] and [Volvo] and preventing the non-removal or expiration of the June 20, 2000, Dealer Sales and Service Agreement on March 31, 2005, pending further proceedings before the commission."  The order also prohibited Volvo from "canceling, non-renewing or permitting the expiration of" the agreement pending further order from the commission.  Finally, the order set a hearing date for the determination of why a permanent cease and desist order should not be issued against Volvo and why the Dealer Agreement should not be renewed for an additional full franchise term of five (5) years.

The parties proceeded to mediation as provided in the Dealer Agreement.  Volvo, however, also argued that, pursuant to the Dealer Agreement,  the parties should be compelled to submit to binding arbitration.  Volvo subsequently filed before the LMVC a motion to compel arbitration on July 5, 2005.  The LMVC denied the motion on September 14, 2006.  Volvo then filed a Petition for Review of the LMVC's decision denying arbitration with the 24th Judicial District Court for the Parish of Jefferson on October 20, 2006.  This appeal is currently pending.  Additionally, The LMVC has stayed the Dealer Agreement termination proceeding as a result of this appeal.

Volvo subsequently filed a Complaint in this Court on June 4,

2007.  Volvo sought an order directing that arbitration proceed between the parties.  Additionally, Volvo sought an order enjoining Crescent and the LMVC from setting the case for trial on the merits prior to a final decision regarding the right to arbitration in this Court.  Finally, Volvo sought a declaratory judgment that various provisions of the Automobile Dealer's Day in Court Act, 15 U.S.C. § 1221, et seq., were applicable to the rights of the parties with respect to the contract.  Defendant Crescent filed a Motion to Dismiss on August 3, 2007, which was granted in part and denied in part.  The Court dismissed all claims except Plaintiff's request to compel arbitration.  Subsequently, both Plaintiff and Defendant filed motions for summary judgment on this remaining issue of compelling arbitration.

Defendant argues that the arbitration clause is permissive because it contains the term "may" rather than the mandatory "shall".  Defendant further argues that under Louisiana contract law any ambiguity should be resolved against the drafter.  Defendant also argues that interpretation of the clause as mandatory renders the clause allowing civil actions meaningless and useless.  Alternatively, Defendant argues that the Dealer Agreement is subject to 15 U.S.C. § 1226 of the Dealer's Day in Court Act, which enables use of arbitration "only if after such controversy arises all parties . . . consent in writing to use arbitration to settle such controversy."  Defendant asserts that the section

4

applies because the Dealer Agreement was modified, either by an agreement to change the dealership location or an offer to extend the agreement, after the effective date of § 1226 of the Dealer's Day in Court Act.

Plaintiff argues that the arbitration clause conveys to each party a right to arbitration and mandates arbitration in the event it is requested by one of the parties. Volvo asserts that it initiated the arbitration by filing the arbitration motion before the LMVC. Plaintiff further argues that the Federal Arbitration Act ("FAA") preempts conflicting state law and that therefore, any ambiguities should be resolved in favor of arbitration in accordance with the FAA.

## DISCUSSION

**A.   Summary judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving

party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B.  Compelling Arbitration**

The parties hotly debate whether Louisiana or federal law applies when evaluating the motion to compel and present case law referencing both state and federal law. The primary dispute is whether the FAA's presumption in favor of arbitration and policy that questions of arbitrability be resolved in favor of arbitration preempts Louisiana general contract law that ambiguities be resolved against the drafter. The issue is moot when applied to the present case because interpretation of the arbitration clause at issue does not hinge on policy preferences regarding resolution of ambiguities but on the plain language of the contract. However, to the extent any ambiguities might exist, the Supreme Court has held:

> [I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and

>   ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.

*Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 109 S.Ct. 1248, 1254 (1989)(internal cites omitted).[1]

---

[1] Defendant Crescent cites *Fleetwood* for the proposition that this federal policy favoring arbitrability should not apply when evaluating the motion to compel *sub judice*. However, *Fleetwood* evaluated the validity of the agreement to arbitrate and whether non-signatories were party to that agreement rather than the permissive or voluntary nature of the agreement. *Fleetwood*, 280 F.3d at 1073 (stating, "this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound").

The Supreme Court explained the interaction between the FAA and state contract law:

>   The Act was designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate, and place such agreements upon the same footing as other contracts. Section 2 of the Act therefore declares that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and § 4 allows a party to such an arbitration agreement to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  But § 4 of the FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that "arbitration proceed *in the manner provided for in the parties' agreement*." 9 U.S.C. § 4.
>   . . .
>   [I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.
>   . . .
>   [T]he federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate.
>   . . .
>   While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered. Accordingly, we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with

In adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts begin by determining whether the parties agreed to arbitrate the dispute. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002); *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006). This determination is generally made on the basis of "ordinary state-law principles that govern the formation of contracts." *Fleetwood,* 280 F.3d at 1073*; Tittle, 280 F.3d at 419*.

Article 7 of the Crescent/Volvo Dealer Agreement outlines the parties' agreement regarding Alternative Dispute Resolution and provides in pertinent part:

> 7.1 Sole and Exclusive Dispute Resolution Procedures
> . . .
>
> Except as provided herein, no civil, regulatory, or administrative action with respect to any dispute,

---

their terms.

In recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, we have held that the FAA preempts state laws which "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10-16 (1984)(finding pre-empted a state statute which rendered agreements to arbitrate certain franchise claims unenforceable).

*Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 109 S.Ct. 1248, 1253-1254, 1255 (1989)(internal quotes and cites omitted). The Supreme Court provided further guidance on the issue in *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686-87:

The text of § 2 declares that state law may be applied "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."
. . .
Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions.

> claim or controversy arising out of or relating to this Agreement may be commenced until the procedures specified in this Article 7 have been followed. These procedures shall be the sole and exclusive procedures for the resolution of any such dispute.

. . .

7.3  Mediation
> 7.3.6 Civil Actions
>> Either party may seek equitable relief prior to mediation to preserve the status quo pending the completion of that process. Except for such an action to obtain equitable relief, neither party may commence a civil action with respect to the matters submitted to mediation until after the completion of the initial mediation session, or 90 days after the date of filing the written request for mediation, whichever occurs first.
>>
>> Mediation may continue after the commencement of a civil action if the parties so desire. The provisions of this Section may be enforced by any Court of competent jurisdiction, and the party seeking enforcement shall be entitled to any award of all costs, fees, and expenses, including attorney's fees, to be paid by the party against whom enforcement is ordered.

. . .

7.4 Arbitration
> 7.4.1  Upon Failure of Mediation
>> If Negotiation followed by mediation as set forth in this Article fails to reach an equitable solution to the dispute within 90 days after commencement, then **such dispute, controversy, or claim _may_ be settled by final and binding arbitration administered by the AAA, in accordance with its applicable rules,** by one arbitrator, if so chosen by the Dealer. <u>**Once initiated, all parties shall**</u> **cooperate with AAA and each other to reach the final decision.**
>
> 7.4.2 Governing Law

9

> This arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 to the exclusion of state laws inconsistent therewith. Judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof.

(Rec. Doc. 1, Ex. 1)(emphasis added).[2]

The key portion of the arbitration clause relevant to the motion to compel states:

> [S]uch dispute, controversy, or claim <u>may</u> be settled by final and binding arbitration administered by the AAA, in accordance with its applicable rules . . . . <u>Once initiated, all parties shall</u> cooperate with AAA and each other to reach the final decision.

*Id.* Interpretation relies on the use of "may" in the first sentence and "shall" in the second. Under Louisiana general contract law, "[t]he word 'shall' is mandatory and the word 'may' is permissive." *Bateman v. Louisiana Public Employees Council No. 17 of the AFL-CIO*, 94-1951, (La. App. 4 Cir. 7/26.95); 660 So.2d

---

[2]Article 7 also contains the following provisions regarding negotiation and mediation:

    7.2 Negotiation
        7.2.1 Negotiating Parties
            The parties shall attempt in good faith promptly to resolve, by negotiation, any dispute, arising out of or relating to this Agreement The negotiating parties shall be the Dealer Principal and the Company's Director of Dealer Development.

    7.3 Mediation
        7.3.1 Mediation Procedure
            If the dispute has not been resolved by Negotiation as set forth in Section 7.2 above within 45 days of the disputing party's notice, and the parties have failed to meet within 20 days, the matter shall be submitted to the American Arbitration Association, or its successor, for mediation under its Commercial Rules.

80, 81(finding that an arbitration provision stating that "the Union may, by written notice to the Council, request arbitration in accordance with the following procedures" did not make arbitration mandatory, but rather "provide[d] a mechanism for arbitration in cases wherein the union elects to handle a grievance"). Additionally, "each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Texas Eastern Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 742 (1998)(applying Louisiana contract law). Contract provisions susceptible to different meanings should be interpreted to avoid neutralizing or ignoring any of them or treating them as surplusage and to preserve validity of the contract. *Id*.

*Bateman v. Louisiana*, a Louisiana arbitration clause case in which the agreement at issue contained no mandatory language that would make all disputes subject to arbitration, distinguished itself from the Fifth Circuit case *Place St. Charles v. J.A. Jones Construction Co.*, 823 F.2d 120 (5th Cir. 1987), which explicitly evaluated a motion to compel arbitration pursuant to the FAA. *Bateman*, 660 so.2d at 81-82. As in the present case, the party opposing arbitration in *Place St. Charles* argued that the arbitration clause did not permit one party to compel the other to arbitrate, "but only provided a mechanism in the event both parties agreed to arbitrate." 823 F.2d at 122. The anti-arbitration party

also argued that an order compelling arbitration violated a reservation of rights provision by limiting its available legal remedies.  *Id.*  The Fifth Circuit rejected both arguments.  The *Place St. Charles* court considered the following provisions:

> 7.1 Differences between the parties to the Contract as to the interpretation, application or administration of this Contract or any failure to agree where agreement between the parties is called for, herein collectively called disputes, which are not resolved in the first instance by decision of the Architect where applicable, shall be settled in accordance with the requirements of this General Condition.
>
> 7.6 In the event of a dispute or difference between Owner and Contractor, which Owner's Contractor and Owner's Architect cannot effectively satisfy, Owner or Contractor may invoke arbitration, and each agrees to be bound by the result of said arbitration. To invoke arbitration, either party shall notify the other, in writing, setting forth:
> 
>   (a)  The issue to be arbitrated; and
>   (b)  That arbitration is demand[ed]; and
>   (c)  Name the person who shall serve as the arbitrator on behalf of that party demanding arbitration.
> 
> . . .
> Article A-5 of the Construction Contract states:
>
> The duties and obligations imposed by the Contract Documents, and the rights and remedies available thereunder, shall be in addition to and not a limitation upon any duties, obligations, rights and remedies otherwise imposed or available by law.
>
> Finally, General Condition 1.5(e) states that in the event of conflict, "the Construction Contract shall govern over all Contract Documents."

*Id.*

The Fifth's Circuit's analysis began by acknowledging the "strong federal policy in favor of arbitration" and stated:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Id*. at 123. The court found that reading provision 7.6, which provided that either party "'<u>may</u>' invoke arbitration and each agrees to be bound," in light of provision 7.1, which provided that "disputes ... <u>shall</u> be settled in accordance with the requirements of this General Condition," resulted in an interpretation that 7.6 was "sufficiently broad to support the district court's order" compelling arbitration. *Id*. at 123-24 (emphasis added).[3]

Applying the general contract interpretation approach of giving meaning to all the terms of the contract, the court interpreted the reservation of rights Article in a manner that gave meaning to both that Article and the General Condition 7. *Id*. at 123 (emphasizing the term "otherwise" when holding that Article A-5 "provide[d] only that the contractual obligations shall not be a limitation on rights 'otherwise imposed or available by law'" and "describe[d] non-litigation rights, such as lien rights and other security interests accorded by state law"). The court also noted,

---

[3]The *Bateman* court summarized the Fifth Circuit's holding in *Place St. Charles*: "In light of the use of the mandatory word "shall" in the latter quoted provision of the agreement, the court correctly found that arbitration was mandatory;" and distinguished *Place St. Charles* from itself: "However, the collective bargaining agreement forming the basis for the instant case contains no such mandatory language making all disputes subject to arbitration. Consequently, this case is distinguishable." 660 So.2d 82.

"Parties to a contract can always agree to arbitrate a dispute when it arises.  The only purpose for the arbitration clause was to agree that disputes would be arbitrated before any arose."  *Id*.

The proximity between the permissive "may" and the mandatory "shall" in the Crescent/Volvo Dealer Agreement arbitration provision is closer than that of the provision considered in *Place St. Charles* and the connection between the terms less tenuous.  The permissive "may" gives the parties the contractual right to pursue arbitration, while "shall" mandates the cooperation of all parties with AAA in arbitration proceedings once arbitration has been initiated.  (Dealer Agreement, Section 7.4.1, Rec. Doc. 1, Ex. 1)("such dispute, controversy, or claim <u>may</u> be settled by final and binding arbitration administered by the AAA, in accordance with its applicable rules . . . . <u>Once initiated, all parties shall</u> cooperate with AAA and each other to reach the final decision")(emphasis added).  Hence a finding that arbitration has been initiated, mandates arbitration.

Crescent argues that interpretation of the arbitration clause as mandatory renders the provision in Section 7.1 of the Dealer Agreement allowing civil actions meaningless and useless.  Section 7.1 provides:

> Except as provided herein, no civil, regulatory, or administrative action with respect to any dispute, claim or controversy arising out of or relating to this Agreement may be commenced until the procedures specified in this Article 7 have been followed.  These procedures shall be the sole and exclusive procedures for the

14

resolution of any such dispute.

(Dealer Agreement, Rec. Doc. 1, Ex. 1). However, the contract does not mandate arbitration in all instances, but mandates arbitration only once it has been initiated. This interpretation of the contract does not foreclose the possibility of civil actions and properly interprets the arbitration clause "in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Texas Eastern*, 145 F.3d 737 at 742. Additionally, such interpretation neither neutralizes nor ignores any of the contract provisions nor "treats them as surplusage," but preserves the validity of the contract. *Id*.

Although the Crescent/Volvo Dealer Agreement does not lay out the steps involved in initiating arbitration like the *Place St. Charles* agreement explained the requirements to invoke arbitration, the Crescent/Volvo Dealer Agreement states that the "final and binding arbitration is to be administered by the AAA, in accordance with its applicable rules." The AAA Commercial Arbitration Rules provide:

> R-1. Agreement of Parties
>
> (a) The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration or submission agreement received by the AAA. The parties, by

> written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.
> . . .
>
> R-4. Initiation under an Arbitration Provision in a Contract
>
> (a) Arbitration under an arbitration provision in a contract shall be initiated in the following manner:
>
> > (i) The initiating party (the "claimant") shall, within the time period, if any, specified in the contract(s), give to the other party (the "respondent") written notice of its intention to arbitrate (the "demand"), which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested.
> > (ii) The claimant shall file at any office of the AAA two copies of the demand and two copies of the arbitration provisions of the contract, together with the appropriate filing fee as provided in the schedule included with these rules.
> > iii) The AAA shall confirm notice of such filing to the parties.

American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, (September 1, 2007), http://www.adr.org/sp.asp?id=22440. The AAA Commercial Arbitration Rules' instructions regarding initiation support Volvo's basic argument that the arbitration clause is mandatory if either party requests arbitration to the extent that the request satisfies the Rules on initiation.[4]

---

[4]It does not appear that Volvo exactly followed the AAA Commercial Arbitration Rules on initiation. Volvo seems to assert that it "moved for an arbitration under the Alternative

**C.   15 U.S.C. § 1226 - Dealer's Day in Court Act**

15 U.S.C. § 1226(a)(2) provides:

> Notwithstanding any other provision of law, whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy.

Section 1226 applies "to contracts entered into, amended, altered, modified, renewed, or extended after November 2, 2002." In January 2001, Crescent requested permission from Volvo to move its facilities, and Volvo conditionally approved the move in a letter dated February 9, 2001. Crescent did not immediately relocate and two years later again requested Volvo's permission to move. In a letter dated February 2, 2004, Volvo requested additional information due to the passage of time but did not withdraw the previous conditional approval, and in a September 30, 2004 letter Volvo conditionally approved the relocation; subsequently, Crescent changed locations.

On March 7, 2005, Volvo sent notice to Crescent that it was not going to extend the 5 year dealership term; however, Volvo offered to extend the dealership for about two months, from June

---

Dispute Resolution provisions of the Dealer Agreement" by filing its motion to compel and corresponding supporting brief with the LMVC. This may satisfy the written notice instruction on initiation, but no claim has been made that Volvo filed two copies of the demand and arbitration provisions and appropriate filing fees with an office of the AAA. (See Rec. Doc. 46-2 at 4, ¶ 20; and Rec. Doc. 54-4 at 3, ¶ 20).

20, 2005 to August 31, 2005, and sent a new Term Addendum to Crescent for its approval and signature. Crescent did not sign the new Term Addendum and instead requested the LMVC to issue an injunction continuing the dealership. (See the parties' statements of Facts, Rec. Doc. 46-2 at 3-4, ¶¶ 12-18; Rec. Doc. 54-4 at 2-3, ¶¶ 12-18).

Crescent argues that the relocation of the dealership was a modification of the Dealership Agreement. Crescent further asserts that Volvo could not have legally-nonrenewed due to its alleged failure to give proper notice of the non-renewal. Hence, argues Crescent, the franchise was extended and thus modified, despite its decision against signing the new Term Addendum. Volvo argues that the relocation agreement is neither a modification nor an amendment because the Dealer Agreement provides for changes in dealer location and further provides that Volvo's permission will not be unreasonably withheld. Furthermore, Volvo asserts that it gave permission for the relocation prior to the enactment of §1226. Finally, Volvo argues that any statutory extension of the franchise does not constitute renewal under § 1226. Volvo asserts that a § 1226 renewal refers to contract modifications achieved through the agreement of the parties, not state statutes. The Court finds Volvo's reasoning persuasive.

The Dealer Agreement provides for the relocation of facilities, with Volvo's approval. (See Dealer Agreement, Section

3.4.2, Rec. Doc. 1, Ex. 1). Hence, approval for relocation and subsequent relocation constitute neither amendments, modifications, or alterations of the Dealer Agreement, but are simply actions taken pursuant to terms of the contract. Crescent did not sign the new Term Addendum which would have, if signed and executed, unquestionably constituted an extension of the contract. The provisions of § 1226 refer to "motor vehicle franchise contracts" and in no way allude to statutory amendments or extensions of private contracts. Hence the Court finds that the Dealer Agreement was not modified after November 2, 2002 and thus 15 U.S.C. § 1226 does not apply. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED** to the extent that once arbitration is initiated in accordance with the AAA Commercial Rules, all parties are compelled to arbitrate the dispute.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **DENIED.**

New Orleans, Louisiana, this 14th day of May, 2009.

**UNITED STATES DISTRICT JUDGE**